**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ID No. 1003021785** |
| | ) | |
| **RASHID ROY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

**OPINION**

**Submitted:** March 9, 2016
**Decided:** April 21, 2016

*Upon Defendant's Motion for Postconviction Relief,* **SUMMARILY DISMISSED**.

Karen V. Sullivan, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for the State*.

Rashid Roy, *pro se*, SBI No. 302387, James T. Vaughn Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977

**BRADY, J.**

## I. INTRODUCTION

Before the Court is a Motion for Postconviction Relief filed pursuant to Superior Court Criminal Rule 61 ("Rule 61") by Rashid Roy ("Defendant") on February 8, 2016,[1] which was amended on March 9, 2016.[2] This is Defendant's second such petition.[3]

On April 7, 2011, following a jury trial that began on March 24, 2011, Defendant was convicted of Murder in the First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Assault in the Third Degree, and Terroristic Threatening.[4] On September 9, 2011, the Court sentenced Defendant to life imprisonment on the Murder charge, and an aggregate of 12 years of Level V incarceration, suspended after 11 years for decreasing levels of supervision.[5] On September 20, 2011, Defendant appealed his conviction to the Delaware Supreme Court and on December 12, 2012, Defendant's conviction was affirmed.[6] On November 18, 2013, Defendant filed his first Motion for Postconviction Relief, which was denied by this Court on July 31, 2015.[7] Defendant appealed this Court's decision on August 31, 2015,[8] and the decision was affirmed by the Delaware Supreme Court on July 31, 2015.[9] For the reasons discussed below, Defendant's current Motion for Postconviction Relief is **SUMMARILY DISMISSED**.

---

[1] Def.'s Amended Mot. for Postconviction Relief, *State v. Roy*, No. 1003021785, Docket No. 146 (Feb. 8, 2016).
[2] Second Amended Motion for Postconviction Relief, *State v. Roy*, No. 1003021785, Docket No. 149 (Mar. 9, 2016).
[3] *See State v. Roy*, 2015 WL 5000990 (Del. Super. Ct. July 31, 2015).
[4] *See Roy v. State*, 62 A.3d 1183, 1185 (Del. 2012).
[5]*See id.*
[6] *See Roy*, 62 A.3d 1183.
[7] Order, *State v. Roy*, No. 1003021785, Docket No. 140 (July 31, 2015).
[8] Letter from Supreme Court, *State v. Roy*, No. 1003021785, Docket No. 141 (Aug. 31, 2015).
[9] *Roy*, 2015 WL 5000990.

## II. FACTS[10]

On February 17, 2010, at about 5:00 a.m., Alvin Pauls ("Pauls") was getting dressed inside his apartment at the Compton Apartment complex when he heard a scream. Approximately ten minutes later, Pauls left his apartment and went onto Seventh Street in Wilmington. Pauls heard a male voice call out to him, "who are you?" from across the street. As Pauls turned to the direction of the sound, he saw a man standing over a second person who was lying in the street. Pauls went to his automobile, called 911, and informed the 911 operator that he believed he heard a woman screaming and had seen a man standing over a body in the street.

A police dispatch went out at 5:17 a.m. directing City of Wilmington police officers to respond to an assault in progress at the intersection of Seventh and Walnut Streets. Wilmington Police Lieutenant Matthew Kurten ("Lieutenant Kurten"), in full uniform but driving a discreetly marked Ford Crown Victoria, was the first officer to reach the scene. Lieutenant Kurten saw only one person on the darkened street, a male later identified to be the Defendant, wearing a camouflage coat and walking on the sidewalk near St. Michael's Day Care. At approximately 5:19 a.m., Lieutenant Kurten radioed the police dispatch center about the Defendant and pulled his car up next to him. Defendant abruptly put his hand up against his face, obscuring the officer's view, and began walking in the opposite direction.

As Lieutenant Kurten began to back his car up to follow the Defendant, he saw two fully-marked patrol cars pull onto the block from the direction where Defendant was walking. The first of those marked vehicles was driven by Officer Patrick Bartolo ("Officer Bartolo"). Officer Bartolo, who had heard Lieutenant Kurten's earlier radio transmission, exited his car, walked

---

[10] Unless otherwise noted, the following facts are taken from the Opinion of the Delaware Supreme Court. *See Roy*, 62 A.3d at 1185.

toward Defendant, and asked the Defendant to approach his cruiser. When Defendant hesitated, Officer Bartolo placed his hand on Defendant and guided him toward the police car.

As Officer Bartolo and the Defendant were approaching the police vehicle, Wilmington Police Officers Timothy O'Connor and Jamaine Crawford arrived and placed Defendant in handcuffs. Officer Crawford asked Defendant if he had any weapons in his possession to which he responded that he had a knife. Officer O'Connor then took a hat from Defendant's hand and discovered a knife inside. After Officer O'Connor removed his hands from Defendant's clothing, he noticed that they were slippery.

When Officer O'Connor shined a flashlight on his own hands, he noticed that his hands were covered in blood. The light revealed that Defendant's hands were also bloody. At the same time this was happening, another officer radioed that she had found an unconscious black male, later identified as the victim, Davelle Neal ("Neal"). Defendant was then placed in Officer Bartolo's patrol car and transported to the police station.

In later statements made to the police, Defendant maintained that he and Neal had been robbed by unknown individuals who fled in an unknown car in an unknown direction. Defendant claims to have wrestled the knife away from the assailants, wrapped it in a scarf, and put it in his hat. The Defendant also told police that he dragged Neal out of the street to help him.

The clothing that Defendant was wearing on the night of the incident was subjected to forensic analysis. Testing revealed that the blood on Defendant's clothes and on the knife was consistent with Neal's blood. At trial, a blood spatter analyst opined that the stains found on Defendant's clothing and in the vicinity of Neal's body were inconsistent with Defendant's statements and were more consistent with Defendant and Neal engaging in a struggle. The

4

police later obtained a video of the crime from motion-activated cameras. Based on the clothing he was wearing that night, Defendant was identified in the video as the one who killed Neal.

## III. PROCEDURAL HISTORY

### A. Defendant's Direct Appeal

On December 12, 2012, Defendant filed a timely appeal of his conviction to the Delaware Supreme Court.[11] In this appeal, Defendant argued that the police lacked articulable suspicion that was necessary to detain him for an investigatory stop and, thereafter, lacked probable cause to arrest him and that any evidence derived from the stop and arrest should have been suppressed by this Court.[12] Defendant further argued that even though he stipulated to the introduction of his drug usage at trial, the State erroneously failed to connect that drug usage to any of the purposes permitted by the Delaware Rules of Evidence.[13]

The Delaware Supreme Court affirmed the conviction finding that Defendant's assertions that he was illegally detained was supported by the record, however, the Court found that any evidence that derived from the unlawful police detention would have inevitably been discovered through routine and legitimate police conduct.[14] The Delaware Supreme Court further held that, to the extent that the State introduced evidence at trial in a manner that exceeded the scope of the parties' prior stipulation, there was no plain error because it would not have affected the outcome of the trial.[15]

---

[11] *See id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 1188-89.
[15] *Id.* at 1991-92.

5

## B.  Defendant's First Motion For Postconviction Relief

On November 18, 2013, Defendant filed his first Motion for Postconviction Relief[16] and was appointed counsel to represent him.[17]  On July 30, 2014, conflict counsel filed a Motion to Withdraw and supporting memorandum indicating that counsel had reviewed the record and could find no meritorious postconviction claims that could be ethically advocated.[18]  The Court permitted Defendant to file any response to the motion for the Court to consider in deciding the motion on the merits.[19]  Defendant was subsequently provided an extension to file his response[20] and on September 30, 2014, counsel submitted the "points" which Defendant wanted the Court to consider.[21]  The State filed a response to both the Motion to Withdraw and the Defendant's "points" on December 2, 2014.[22]

Defendant, in his Motion for Postconviction Relief and his "points" for the Court to consider, made two claims.[23]  Defendant first argued that his trial counsel was ineffective for failing to make a timely objection to the testimony of Paul Kish who testified regarding the nature of how certain blood located on the Defendant's clothing came to be there in his expert opinion.[24]  Specifically, Defendant contended that the testimony was presented without a proper foundation.[25]  Defendant further argued that the Court erred in allowing the jury to hear unreliable expert testimony, which deprived him of a fair trial and due process.[26]

---

[16] Def.'s Mot. for Postconviction Relief, *State v. Roy*, No. 1003021785, Docket No. 125 (Nov. 18, 2013).

[17] *See* Letter from Patrick Collins, Esquire, *State v. Roy*, No. 1003021785, Docket No. 126 (Jan. 29, 2014).

[18] Mot. to Withdraw as Counsel, *State v. Roy*, No. 1003021785, Docket No. 134 (July 31, 2014).

[19] Scheduling Order, *State v. Roy*, No. 1003021785, Docket No. 127 (Jan. 29, 2014).

[20] Letter from Judge Brady, *State v. Roy*, No. 1003021785, Docket No. 135 (Aug. 26, 2014).

[21] Letter from Albert J. Roop, *State v. Roy*, No. 1003021785, Docket No. 136 (Sept. 30, 2014).

[22] State's Response, *State v. Roy*, No. 1003021785, Docket No. 139 (Dec. 4, 2014).

[23] *See Roy*, 2015 WL 5000990.

[24] *Id.*

[25] *Id.*

[26] *Id.*

The Court denied Defendant's Motion for Postconviction Relief.[27]  With regard to Defendant's first claim, the Court noted that trial counsel did make a timely objection to the expert's opinion evidence, by filing a motion and requesting *voir dire* before the expert was permitted to testify before the jury.[28]  Both trial counsel and the State questioned the witness during *voir dire* and the Court subsequently determined that the expert could testify before the jury and that Defendant's challenge went to the weight of the evidence rather than its admissibility.[29]  The Court therefore concluded that trial counsel's actions did not fall below an objective standard of reasonableness.[30]  With regard to Defendant's second claim, the Court found the claim was procedurally barred because it had been formally adjudicated and was not brought on direct appeal to the Delaware Supreme Court.[31]

## C.  Defendant's Current Motion For Postconviction Relief

On February 8, 2016, Defendant filed the instant Motion for Postconviction Relief,[32] which he amended on March 9, 2016.[33]  In this motion, Defendant makes three claims: (1) "postconviction counsel failed to investigate and raise ineffective assistance of direct appeal counsel claims for failure to investigate and challenge the Delaware Supreme Court's misapprehended fact finding of the 911 call"; (2) "[p]ostconviction counsel failed to investigate and raise ineffective assistance of trial counsel for failing to consult with defendant and inform him of right to testify during suppression hearing"; and (3) due process.[34]

---

[27] *Id.*
[28] *Id.* at *2
[29] *Id.* at *2
[30] *Id.* at *2
[31] *Id.* at *2
[32] Def.'s Mot. for Postconviction Relief, *State v. Roy*, No. 1003021785, Docket No. 145 (Feb. 8, 2016).
[33] Def.'s Amended Mot. for Postconviction Relief, *State v. Roy*, No. 1003021785, Docket No. 145 (Mar. 9, 2016).
[34] Def.'s Amended Mot. for Postconviction Relief, *State v. Roy*, No. 1003021785, Docket No. 145 (Mar. 9, 2016). Defendant states in support of his third claim: "[t]he Delaware Supreme Court misapprehended and disturbed conclusions of facts made by the trial judge which are supported by competent evidence that pertained to the 911 call received by Wilmington Police Department. The Trial judge concluded the 911 calls stated a man standing over

7

# IV. ANALYSIS

## A. Procedural Bars

Before addressing the merits of Defendant's claims, the Court must apply the procedural bars set forth in Superior Court Criminal Rule 61(i).[35] Rule 61, provides that the Court must reject a motion for postconviction relief if it is procedurally barred. That Rule provides that a motion is procedurally barred if the motion is untimely, repetitive, a procedural default exists, or the claim has been formerly adjudicated.[36] Rule 61(i)(1) provides that a motion for postconviction relief is time barred when it is filed more than one year after the conviction has become final or one year after a retroactively applied right has been newly recognized by the United States Supreme Court or by the Delaware Supreme Court.[37] Rule 61(i)(3) bars consideration of any claim "not asserted in the proceedings leading to the conviction" unless the petitioner can show "cause for relief from the procedural default" and "prejudice from violation of the movant's rights."[38] Rule 61(i)(4) provides that any claim that has been adjudicated "in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceedings" is barred "unless reconsideration of the claim is warranted in the interest of justice."[39]

If a procedural bar exists, the Court will not consider the merits of Defendant's postconviction claim unless Defendant can show that the exception found in Rule 61(i)(5) applies.[40] Rule 61(i)(5) provides that the procedural bars can be overcome if Defendant makes

---

top of a woman. The Delaware Supreme Court misapprehended this key fact and concluded the 911 call stated a man standing over top of a body." *See* Def.'s Amended Mot. for Postconviction Relief, *State v. Roy*, No. 1003021785, Docket No. 145, at *2 (Mar. 9, 2016).

[35] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[36] *See* Super. Ct. Crim. R. 61(i)(1)-(4).

[37] Super. Ct. Crim. R. 61(i)(1).

[38] Super. Ct. Crim. R. 61(i)(3).

[39] Super. Ct. Crim. R. 61(i)(4).

[40] *See* Super. Ct. Crim. R. 61(i)(5).

out a "colorable claim that there was a miscarriage of justice because of a constitutional violation that undermines the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[41]

## B. Discussion

Defendant claims that his postconviction counsel was ineffective for failing to raise certain issues in his previous Rule 61. Specifically, Defendant argues: (1) that his postconviction counsel was ineffective for failing to argue that his appellate counsel was ineffective for failing to investigate and challenge the Delaware Supreme Court's "misapprehended fact finding of the 911 call"; (2) postconviction counsel was ineffective for failing to argue that Defendant's trial counsel was ineffective for failing to consult and inform Defendant of his right to testify at the suppression hearing; and (3) Defendant's due process rights were violated with regard to the Delaware Supreme Court's "misapprehended and disturbed conclusions of facts."[42]

In his first postconviction matter, Defendant was provided ample opportunity to raise any claims he had relating to trial and appellate counsel prior to the Court's decision on that Motion.[43] Defendant was given an extension to file a reply to postconviction counsel's Motion to Withdraw and to provide the Court with any additional information Defendant wanted the Court to consider.[44] Defendant did, in fact, file several "points" for the Court to consider in making its determination on Defendant's first Motion for Postconviction Relief. Specifically, Defendant argued that his trial counsel was ineffective for failing to make a timely objection to the testimony of Paul Kish for lack of a proper foundation, and that the Court erred in allowing

---

[41] *Id.*

[42] Def.'s Amended Mot. for Postconviction Relief, *State v. Roy*, No. 1003021785, Docket No. 145 (Mar. 9, 2016).

[43] Letter from Judge Brady, *State v. Roy*, No. 1003021785, Docket No. 135 (Aug. 26, 2014).

[44] Letter from Judge Brady, *State v. Roy*, No. 1003021785, Docket No. 135 (Aug. 26, 2014).

the jury to hear Kish's testimony.[45] None of Defendant's current claims were listed in his points for consideration even though his current claims were known to him at the time he filed his first Motion for Postconviction Relief and "points" for the Court to consider.[46]

Defendant's current, second Motion for Postconviction Relief is procedurally barred, pursuant to Superior Court Criminal Rule 61(i)(2). Defendant was given ample opportunity in his first Motion to raise his current claims, and he failed to do so, thereby waiving consideration of those claims.[47] Further, Defendant's claims do not meet the statutory exceptions to those procedural bars. Rule 61(i)(2) provides that "[n]o second or subsequent motion is permitted under this Rule unless that second or subsequent motion satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule."[48] Subparagraph (2)(i) and (2)(ii) of subsection (d) state that the movant must plead new evidence exists or that a new rule of constitutional law, made retroactive to cases, applies to the movant's case and renders the conviction invalid.[49] Defendant does not assert either exception

Finally, Defendant has failed to provide any basis, and the record is devoid of any, that would permit this Court to consider whether any other exception to the procedural bars would apply in this case.[50]

---

[45] *See Roy*, 2015 WL 5000990.

[46] Letter from Albert J. Roop, *State v. Roy*, No. 1003021785, Docket No. 136 (Sept. 30, 2014).

[47] *See State v. Watson*, 2008 WL 1952160, at *2 (Del. Super. Ct. March 25, 2008) ("Rule 61(i)(2) provides that '[a]ny ground for relief that was not asserted in a prior postconviction proceeding, as required by subdivision (b)(2) of this rule, is thereafter barred, unless consideration of the claim is warranted in the interest of justice.' Pursuant to Rule 61(i)(2), those grounds not previously raised are deemed waived.").

[48] Super. Ct. Crim. R. 61(i)(2) (2014).

[49] Super. Ct. Crim. R. 61(d)(2)(i)-(ii) (2014).

[50] Super. Ct. Crim. R. 61(i)(3) provides "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows (A) cause for relief from the procedural default and (B) Prejudice from violation of the movant's rights."

## V. CONCLUSION

For the reasons stated above this, Defendant Rashid Roy's second Motion for Postconviction Relief, is **SUMMARILY DISMISSED.**

**IT IS SO ORDERED.**

_____/s/_____
**M. Jane Brady**
Superior Court Judge

11